IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| | : |
| BRANCH AVENUE AUTO AUCTION, LLC, | |
| et al. | : |
| | |
| v. | :   Civil Action No. DKC 25-387 |
| | |
| | : |
| MARYLAND VEHICLE ADMINISTRATION- | |
| GLEN BURNIE | : |

**MEMORANDUM OPINION**

This case arises from the alleged refusal of Defendant Maryland Department of Transportation, Motor Vehicle Administration ("Defendant" or "MVA"), to register vehicles sold by Branch Avenue Auto Auction, LLC, Branch Avenue Auction Sales, Inc., and Jason Hairston (collectively "Plaintiffs"), and investigative activities of Defendant at Plaintiffs' business locations. Presently pending and ready for resolution is the motion to dismiss filed by Defendant. (ECF No. 7). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion will be granted in part, and denied in part.

I.    **Background**

A. **Factual Background**[1]

The facts alleged in the complaint are sparse.  Branch Avenue
Auto Auction, LLC ("Branch Avenue Auction") and Branch Avenue
Auction Sales, Inc. ("Branch Avenue Sales"), are "duly authorized
business entities, licensed to do business in the state of Maryland
by the Maryland Department of Transportation."  (ECF No. 3 ¶ 3).
Both Branch Avenue Auction and Branch Avenue Sales are owned and
operated by Plaintiff Jason Hairston ("Mr. Hairston"), an African-
American man.  (*Id.*).

Mr.  Hairston  purchased  Branch  Avenue  Auction  "from  a
Caucasian man who had operated the [A]uction in the same exact
manner Mr. Hairston has been operating it."  (*Id.*).   "When
customers who purchase vehicles from Mr. Hairston would go to the
MVA"  to  register  their  vehicles,  they  were  told  that  "Mr.
Hairston's  business  is  under  investigation  and  they  couldn't
register their vehicles." (*Id.*).

In September 2023, MVA Agents raided Mr. Hairston's office
and seized his documents.  On May 21, 2024, Mr. Hairston "met with
MVA investigators Mike Swartz, Jason and Wendy Johnson at the MVA."
(*Id.*).  The MVA investigators "told [Mr. Hairston] that he was no
longer permitted to sell to the public."  Mr. Hairston asked the

---

[1] The following facts are set forth in the complaint and
construed in the light most favorable to the Plaintiffs.

investigators "what he needed to do to get back online." They told him he needed "to get the white boy behind the counter to get an approval from the state." (*Id.*).

As a result of the MVA's actions, Plaintiffs "have incurred economic harm, harm to [Mr. Hairston's] professional reputation, disruption, and profit loss totaling $2,463,071.00." (*Id.*). Plaintiffs filed a notice of claim with the state as required by Md. Code, S.G., § 12-106(b).[2]

**B. Procedural Background**

Plaintiffs filed their complaint in the Circuit Court for Prince George's County on December 29, 2024. (ECF No. 3). Defendant removed the case to this court on February 7, 2025, on the basis the court has original jurisdiction over the federal claims asserted in the complaint pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367. (ECF No. 1, at 2). On February 14, 2025, Defendant filed a motion to dismiss the complaint. (ECF No. 7). Plaintiffs responded on February 19, 2025 (ECF No. 8), and Defendant replied on March 5, 2025. (ECF No. 10).

---

[2] Plaintiffs assert that "On May 26, 2024, Plaintiffs filed a notice of claim with the Maryland State Treasurer. An acknowledgment of Claim was received by the Plaintiffs on May 30, 2024. Plaintiffs received a final denial notice on their claim on November 26, 2024." (ECF No. 8-1, at 1). Defendant does not dispute that Plaintiffs complied with S.G. § 12-106(b)'s notice requirement.

## II.  Standards of Review

Defendant seeks dismissal for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1), or alternatively, for failure to state a claim under Fed.R.Civ.P. 12(b)(6).

### A. Fed.R.Civ.P. 12(b)(1)

A motion to dismiss under Rule 12(b)(1) should be granted "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). In the context of such a motion, courts should "regard the pleadings as mere evidence on the issue," and "may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). The plaintiff bears the burden of proving that subject matter jurisdiction exists. *Richmond, Fredericksburg & Potomac*, 945 F.2d at 768-69.

### B. Fed.R.Civ.P. 12(b)(6)

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). The court "must accept the complaint's factual allegations as true and construe the facts in the light most favorable to the plaintiff." *Barnett v. Inova Health Care Servs.*, 125 F.4th 465, 469 (4th Cir. 2025) (citing *Barbour v. Garland*, 105 F.4th 579, 589 (4th Cir. 2024)). A plaintiff's

complaint must only satisfy the standard of Rule 8(a)(2), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting Fed.R.Civ.P. 8(a)(2)). A Rule 8(a)(2) "showing" requires "stat[ing] a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that defendant is liable for the misconduct alleged." *Mays v. Sprinkle*, 992 F.3d 295, 299-300 (4th Cir. 2021) (quoting *Iqbal*, 556 U.S. at 663). Legal conclusions couched as factual allegations are insufficient, *Iqbal*, 556 U.S. at 678, as are conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

## III. Analysis[3]

### A. Immunity

Defendant asserts that Plaintiffs' state law claims are barred by the Eleventh Amendment. (ECF No. 7-1, at 4-6).

---

[3] The United States Court of Appeals for the Fourth Circuit has not clarified "whether a dismissal on Eleventh Amendment

Plaintiffs assert that two exceptions to Eleventh Amendment Immunity apply in this action because (1) "this suit is an action against state officials for alleged violations of law" and (2) "the State of Maryland has consented to such tort suits, consistent with the [Maryland Tort Claims Act]." (ECF No. 8-1, at 4).

The parties have not been careful to differentiate between Eleventh Amendment immunity and the broader concept of sovereign immunity. *Bd. of Educ. of Balt. Cnty. v. Zimmer-Rubert*, 409 Md. 200, 211-12 (2009) ("[T]he term 'sovereign immunity' encompasses the specific defense of Eleventh Amendment immunity.").

> The doctrine of sovereign immunity from suit, rooted in the ancient common law, is firmly embedded in the law of Maryland. *See, e. g., Bradshaw v. Prince George's County, Md.*, 396 A.2d 255 (1979); *American Structures v. City of Balto.*, 278 Md. 356, 364 A.2d 55 (1976); *University of Maryland v. Maas*, 173 Md. 554, 197 A. 123 (1938). Although originally based on the tenet that "the King can do no wrong," the doctrine is presently viewed as a rule of policy which protects the State from burdensome interference with its governmental functions and preserves its control over State agencies and funds. *See Godwin v. County Comm'rs*, 256 Md. 326, 260 A.2d 295 (1970); *Baltimore v. State*, 173 Md.

---

immunity grounds is a dismissal for failure to state a claim under Rule 12(b)(6) or a dismissal for lack of subject matter jurisdiction under Rule 12(b)(1)." *Gross v. Morgan State Univ.*, 308 F.Supp.3d 861, 865 (D.Md. 2018) (quoting *Andrews v. Daw,* 201 F.3d 521, 525 (4th Cir. 2000)). Judges in this district have "favored analysis under Rule 12(b)(1) because while the Eleventh Amendment cannot be considered a 'true limit' on this Court's subject-matter jurisdiction, it nevertheless functions as 'as a block on the exercise of that jurisdiction[.]'" *Id.* (quoting *Biggs v. Meadows*, 66 F.3d 56, 60 (4th Cir. 1995)).

> 267, 271, 195 A. 571, 573-74 (1937); *State v. Wingert*, 132 Md. 605, 104 A. 117 (1918); *State v. B. & O. R. R. Co.*, 34 Md. 344 (1871), Aff'd, 88 U.S. (21 Wall.) 456, 22 L.Ed. 678 (1875); 72 Am.Jur.2d States, Territories, & Dependencies § 99 (1974).

*Katz v. Wash. Suburban Sanitary Comm'n*, 284 Md. 503, 507 (1979)(footnotes omitted.)  "The Eleventh Amendment bars suits in federal court for monetary damages against a state or state officials acting in their official capacity." *Borkowski v. Balt. Cnty.*, 414 F.Supp.3d 788, 804 (D.Md. 2019) (citing *Ballenger v. Owens*, 352 F.3d 842, 844-45 (4th Cir. 2003); *Lewis v. Bd. of Educ. of Talbot Cnty.*, 262 F.Supp.2d 608, 612 (D.Md. 2003)).  Eleventh Amendment immunity is waived by voluntary removal of a case to this court.  *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 624 (2002).  Nevertheless, some portion of the state sovereign immunity may still be applicable.

> When a state voluntarily removes a case to federal court, it implicates the distinction between immunity under the Eleventh Amendment and the "broader" doctrine of State sovereign immunity. *Williams [v. Morgan State Univ.*], 850 F. App'x [172] at 174 [(4th Cir. 2021)]. The Supreme Court has held that a state waives its Eleventh Amendment immunity when it voluntarily removes a case to federal court. *See Lapides*, 535 U.S. at 619-20, 122 S.Ct. 1640 (2002). In contrast, "a state does not waive its [State] sovereign immunity by removing a suit to federal court." *Williams I*, 850 F. App'x at 174 (citing *Passaro [v. Virgnia*], 935 F.3d [243] at 247 [(4th Cir. 2019)]); *see also Williams [v. Morgan State Univ.*], 2022 WL 7375983, at *1 (4th Cir. Oct. 19, 2022). Rather, "a state's

> removal of a suit to federal court waives
> sovereign immunity only if the state has
> consented to suit in its own courts." *Biggs v.*
> *N.C. Dep't of Pub. Safety*, 953 F.3d 236, 241
> (4th Cir. 2020). And, as noted, federal law
> requires that a state make a "clear statement"
> in order to waive its sovereign immunity.
> *Passaro*, 935 F.3d at 248.

*Francis v. Maryland*, No. 21-1365-ELH, 2023 WL 2456553, at *14

(D.Md. Mar. 10, 2023). Defendant removed this case to federal

court on February 7, 2025 (ECF No. 1), waiving its Eleventh

Amendment immunity. Defendant, however, has not made a "clear

statement" waiving sovereign immunity entirely, and therefore is

still entitled to sovereign immunity to the extent Maryland has

not consented to suit in its own courts. *Biggs*, 953 F.3d at 241.

   Plaintiffs assert that the state law claims are not barred by

sovereign immunity because Maryland "has waived its immunities and

those of its agencies for tort actions under the Maryland Tort

Claims Act," and Defendant is a unit of the Maryland Department of

Transportation. (ECF No. 8-1, at 5). Plaintiffs therefore contend

that Defendant is only "entitled to limited immunity . . . as

provided under the MTCA." (*Id.*).

> The MTCA offers "a limited waiver of
> sovereign immunity and 'is the sole means by
> which the State of Maryland may be sued in
> tort.'" *Paulone v. City of Frederick*, 718 F.
> Supp. 2d 626, 637 (D. Md. 2010) (citation
> omitted); *see Condon v. Md.-Univ. of Md.*, 332
> Md. 481, 492, 632 A.2d 753, 758 (1993);
> *Mitchell v. Hous. Auth. of Balt. City*, 200 Md.
> App. 176, 201-02, 26 A.3d 1012, 1027-28
> (2011). It grants immunity to State personnel

8

> from liability "for a tortious act or omission
> that is within the scope of the public duties
> of the State personnel and is made without
> malice or gross negligence." Md. Code (2020
> Repl. Vol.), § 5-522(b) of the Courts and
> Judicial Proceedings Article ("C.J."); *see
> also* S.G. § 12-105 ("State personnel shall
> have the immunity from liability described
> under § 5-522(b) of the Courts and Judicial
> Proceedings Article.").

*Francis*, 2023 WL 2456553, at *23. The MTCA explains that "Immunity

of the State is not waived . . . for . . . [a]ny tortious act or

omission of State personnel that: (i) [i]s not within the scope of

the public duties of the State personnel; or (ii) [i]s made with

malice or gross negligence[.]" C.J. § 5-522(a)(4). Further, the

Supreme Court of Maryland has explained that "the tort 'liability

of the State and [the tort] liability of individual State personnel

are mutually exclusive. If the State is liable, the individual is

immune; if the individual is liable, the State is immune.'" *Marks

v. Dann*, No. 13-0347-DKC, 2013 WL 8292331, at *7 (D.Md. July 24,

2013) (alteration in Marks) (quoting *Newell v. Runnels*, 407 Md.

578, 635 (2009)).

Many of Plaintiffs' claims are insufficiently pled and will

be dismissed under Fed.R.Civ.P. 12 (b)(6), assuming sovereign

immunity would not apply. For any that pass muster under that

standard, the sovereign immunity issue will be addressed.

**B. State Law Claims**

**1. Count I: Discrimination Based on Race**

In Count I, Plaintiffs assert a claim of discrimination based on race against Defendant pursuant to Md. Code Ann., State Gov't § 20-602.  Section 20-602 states, in relevant part:

> It is the policy of the State . . .
>
> (1) to assure all persons equal opportunity in receiving employment and in all labor management-union relations, regardless of race, color, religion, ancestry or national origin, sex, age, marital status, sexual orientation, gender identity, or disability unrelated in nature and extent so as to reasonably preclude the performance of the employment; and
>
> (2) to that end, to prohibit discrimination in employment by any person.

The statute Plaintiffs rely on is an employment statute. Plaintiffs do not allege the existence of an employee/employer relationship between any of the Plaintiffs and the Defendant or employment discrimination of any kind.  Plaintiffs therefore do not state a claim under Md. Code Ann., State Gov't § 20-602.  Count I will be dismissed for failure to state a claim.

**2. Count II: Harassment**

In Count II, Plaintiffs allege Defendant violated Md. Code Ann., Crim. Law § 3-803 when it "repeatedly contacted Plaintiffs demanding documentation and evidence of their legal status as a licensed Maryland business entity" and "ultimately sent its agents

to Plaintiffs' location and raided their offices, seizing confidential records and client files without any legal basis or justification." (ECF No. 3 ¶ 5).

The statute Plaintiffs rely on is criminal and thus, clearly not a tort claim allowed under the MTCA. Further, there is no private cause of action under Md. Code Ann., Crim. Law § 3-803. *See Demo v. Kirksey*, No. 8:18-cv-00716-PX, 2018 WL 5994995, at *6-7 (D.Md. Nov. 15, 2018) ("Although Maryland has criminalized harassment, MD. Code, Crim. Law § 3-803, no private civil cause of action exists for the same.").

Count II will be dismissed for failure to state a claim.

**3. Count III: Tortious Interference with Contract**

In Count III, Plaintiffs label the claim as tortious interference with contract. (ECF No. 3 ¶ 6). The body of the claim, however, is a tortious interference with business relations claim.

In Maryland, the elements for tortious interference with contract are:

> (1) a contract exists between the plaintiff and a third party, (2) the defendant knows of that contract, (3) the defendant intentionally interferes with that contract (and the interference is wrongful and without justification); (4) the third party breaches that contract; and (5) the plaintiff suffers damages from the breach. *See Kwang Dong Pharmaceutical Co. v. Han*, 205 F.Supp.2d 489, 496 (D. Md. 2002).

11

*Pillar to Post, Inc. v. Md. Home Inspectors, Inc.*, No. 18-3761-DKC, 2020 WL 1158583, *6 (D.Md. Mar. 10, 2020).  They have not alleged a contract.  There is another tort, however:

> Under Maryland law the following elements are necessary to state a claim under the tort of intentional interference with business relations: "(1) intentional and willful acts; (2) calculated to cause damage to the plaintiffs in their lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants; and (4) actual damage and loss resulting." *Berlyn, Inc. v. Gazette Newspapers*, 223 F.Supp.2d 718, 741 (D.Md.2002) (citing *Alexander & Alexander v. B. Dixon Evander & Assocs., Inc.*, 336 Md. 635, 650 A.2d 260, 269 (1994)). "[T]he two general types of tort actions for interference with business relationships are inducing the breach of an existing contract and, more broadly, maliciously or wrongfully interfering with economic relationships in the absence of a breach of contract." *Natural Design, Inc. v. Rouse Co.*, 302 Md. 47, 485 A.2d 663, 674 (1984).

*S. Volkswagen, Inc. v. Centrix Fin., LLC*, 357 F.Supp.2d 837, 850–51 (D.Md. 2005).  Defendant does not directly address Plaintiffs' claim for tortious interference with business relations, instead, Defendant generally contends that Plaintiffs "do not adequately describe [their] claims in the context of any factual or legal authority." (ECF No. 7-1, at 5).

Plaintiffs allege Defendant "intentionally shut down Plaintiffs' business with the clear knowledge that doing so would deprive Plaintiffs of the income generated by its business." (ECF

No. 3 ¶ 6).  Plaintiffs further allege that Defendant's actions were taken "without any legal basis or justification" (*Id.* ¶ 5), and that Defendant's actions resulted in economic harm, reputational harm, and loss profit.  (*Id.* ¶ 3).  The allegations in the complaint, taken as true and construed in the light most favorable to Plaintiffs, are sufficient to state a plausible claim for tortious interference with business relations.

Next it must be determined whether the State has waived sovereign immunity for this claim.  The Supreme Court of Maryland has explained that the MTCA "plainly appears to cover intentional torts and constitutional torts as long as they were committed within the scope of state employment and without malice or gross negligence."  *Williams v. Morgan State Univ.*, 484 Md. 534, 550 (2023) (quoting *Lee v. Cline*, 384 Md. 245, 256 (2004)).  Because tortious interference with business relations is an intentional tort, for the purposes of this motion, the State has consented to suit pursuant to the MTCA.  Accordingly, Defendant's motion will be denied as to Count III.

### 4. Count IV: Business Defamation

In Count IV, Plaintiffs allege Defendant made defamatory statements about Plaintiffs in violation of Maryland law.  (*Id.* at 7).

To state a claim for defamation in Maryland, a plaintiff must plead "(1) that the defendant made a defamatory statement to a

third person, (2) that the statement was false, (3) that the defendant was legally at fault in making the statement, [and] (4) that the plaintiff thereby suffered harm." *Offen v. Brenner*, 402 Md. 191, 198 (2007). "A defamatory statement is one which tends to expose a person to public scorn, hatred, contempt or ridicule, thereby discouraging others in the community from having a good opinion of, or associating with, that person." *Id.* at 198-199 (internal quotations removed).

Plaintiffs allege that "[w]hen members of the public went to the MVA to register vehicles purchased from Plaintiffs, MVA agents made defamatory statements about [P]laintiffs to their clients." (ECF No. 3, at 4). As factual support, Plaintiffs allege that "[w]hen customers who purchased vehicles from Mr. Hairston would go to the MVA to get their vehicles registered, they'd be told that Mr. Hairston's business is under investigation and they couldn't register their vehicles." (*Id.* ¶ 3). Plaintiffs fail to plead the existence of a defamatory statement. Plaintiffs' conclusory allegation that defamatory statements were made is insufficient plausibly to allege a claim of defamation. *See Artis v. U.S. Foodservice, Inc.,* No. 11-3406-ELH, 2012 WL 2126532, at *10 (D.Md. June 12, 2012) (dismissing a defamation claim because the plaintiff failed to identify any allegedly defamatory statements). Accordingly, Count IV will be dismissed.

### 5. Count V: Gross Negligence

Plaintiffs allege Defendant was grossly negligent because it "permitted certain business owners to operate while denying Plaintiffs to engage in the exact same business with the knowledge that its actions would result in devastating financial consequences to the Plaintiffs." (ECF No. 3, at 4).

Pursuant to the MTCA, the State retains immunity for: "[a]ny tortious act or omission of State personnel that: (i) [i]s not within the scope of the public duties of the State personnel; or (ii) [i]s made with malice or gross negligence[.]" C.J. § 5-522(a)(4). Because Plaintiffs allege gross negligence on the part of Defendant's employees, Defendant retains sovereign immunity for this claim pursuant to the MTCA. *Id.*

Count V of the complaint will be dismissed based on sovereign immunity.

### C. Federal Law Claims

In Counts VI, VII, and VIII, Plaintiffs allege violations of the Fifth Amendment, the Fourteenth Amendment, and the Contract Clause.

### 1. Count VI: Fifth Amendment Takings Clause

In Count VI, Plaintiffs assert a violation of the Fifth Amendment's Takings Clause.[4]

---

[4] Plaintiffs assert that they were deprived of their property without compensation in violation of the Fifth Amendment. The

15

The Fifth Amendment's Takings Clause "provides that private property shall not 'be taken for public use, without just compensation.'" *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 536 (2005). This court has explained,

> The Takings Clause . . . Requires that the government compensate plaintiffs for "direct government appropriation or physical invasion of private property." *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 537, 125 S.Ct. 2074, 161 L.Ed.2d 876 (2005), and for "regulation [that] goes too far" in restricting the use of private property. *Quinn* [*v. Bd. of Cnty. Comm'rs*], 862 F.3d [433] at 438 [(4th Cir. 2017)] (quoting *Pa. Coal Co. v. Mahon*, 260 U.S. 393, 43 S.Ct. 158, 67 L.Ed. 322 (1922)).

*Pulte Home Corp. v. Montgomery Cnty., Md.*, 271 F.Supp.3d 761, 775 (D.Md. 2017).

> There are two categories of actionable takings. First, where the government "requires an owner to suffer a permanent physical invasion of [its] property" or " 'completely deprive[s] an owner of all economically beneficial us[e]' of [its] property," the Government has per se taken the owner's property. *Lingle*, 544 U.S. at 538, 125 S.Ct. 2074 (emphasis in original) (quoting *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1019, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992)). Second, where the government action does not rise to the level of a per se taking, regulatory takings are governed by the standards set forth in *Penn Cent. Transp. Co. v. New York City*, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978), which turn largely on

---

Takings Clause of the Fifth Amendment applies to only the conduct of federal actors, not state actors like the Defendant in this matter. The Fifth Amendment is made applicable to the States through the Fourteenth Amendment. *See Phillips v. Wash. Legal Found.*, 524 U.S. 156, 163-64 (1998).

> "the magnitude of a regulation's economic
> impact and the degree to which it interferes
> with legitimate property interests."

*Id.* at 776.  Nowhere in the complaint do Plaintiffs allege a taking of private property for public use.[5]  Further, while Plaintiffs argue a regulatory taking occurred, Plaintiffs have not identified any regulation that "interfered with [a]nd deprived them of their income." (ECF No. 8-1, at 6-7).  Accordingly, Plaintiffs have not alleged a Fifth Amendment violation and Count VI will be dismissed.

**2. Count VII: Fourteenth Amendment**

In Count VII, Plaintiffs allege that Defendant violated the Fourteenth Amendment's Equal Protection Clause.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting U.S. Const. amend. XIV, § 1).  To succeed on a class-of-one theory, a party must allege that he or she "has been intentionally treated differently from others

---

[5] Plaintiffs argue in their opposition "that Defendant[] 'did take the personal property of the Plaintiffs and place restrictions on the real property of the Plaintiffs for the benefit of the public,'" (ECF No. 8-1, 6), however, this allegation does not appear in the complaint and is entirely conclusory, without stating any facts in support.  In any event, a party may not amend a complaint in an opposition to a motion to dismiss.  *McDonald v. LG Elecs. USA, Inc.*, 2119 F.Supp.3d 533, 541 (D.Md. 2016).

similarly situated and that there is no rational basis for the difference in treatment." *Vill. Of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Defendant argues that although Mr. Hairston "is an African American male, a protected class of individual, he fails to show sufficient basis for the heightened scrutiny of his claim" because "he has not identified 'persons materially identical' to him who have received different treatment." (ECF No. 7-1, at 10). Further, Defendant contends "even if Plaintiffs could show sufficient similarity of action, their claim still fails" because "[h]eightened scrutiny applies only when a law is solely motivated by animus toward a particular group." (*Id.* at 11) (citing *Romer v. Evans*, 517 U.S. 620 (1996)).

Plaintiffs allege that Mr. Hairston was treated differently than the previous owner of Branch Avenue Auction and Branch Avenue Sales, a Caucasian man, despite the two operating "the auction in the exact same manner . . . ." (ECF No. 3 ¶ 3). Plaintiffs further allege the difference in treatment was done for "a discriminatory pretense." (*Id.* at 8).

Taken as true and construed in the light most favorable to Plaintiffs, the allegations in the complaint, albeit very thin, are sufficient to state a plausible Fourteenth Amendment claim. Accordingly, Defendant's motion to dismiss will be denied as to Count VII.

18

### 3. Count VIII: Contract Clause

In Count VIII, Plaintiffs allege Defendant violated the
Contract Clause of the United States Constitution.  The Contract
Clause states, in relevant part, "No state shall . . . pass any
. . . Law impairing the Obligation of Contracts . . . ." U.S.
Const. Art. I, § 10, cl. 1.  The United States Supreme Court has
"developed a 'three-part analysis for harmonizing the command of
the Clause with' those powers 'necessarily reserved' to the states
'to provide for the welfare of their citizens.'" *City of Charleson
v. Pub. Serv. Comm'n.*, 57 F.3d 385, 390-91 (4th Cir. 1995) (quoting
*Balt. Tchrs. Union v. Mayor and City Council of Balt.*, 6 F.3d 1012,
1015 (4th Cir.1993), *cert. denied*, 510 U.S. 1141, 114 S.Ct. 1127,
127 L.Ed.2d 435 (1994) (citing *U.S. Trust Co. v. New Jersey*, 431
U.S. 1, 20 (1977))).

The United States Court of Appeals for the Fourth Circuit has
explained:

> Initially, a court must determine whether
> state law has, in fact, impaired any contract;
> if so, it must then determine if the contract
> was "substantially impaired;" if the state law
> is found to constitute a substantial
> impairment of the contract, a court must
> determine "whether that impairment is
> nonetheless permissible as a legitimate
> exercise of the state's sovereign powers."

*Id.* (quoting *Balt. Tchrs. Union*, 6 F.3d at 1015 (citations
omitted)).  Plaintiffs do not identify a state law that
"substantially impaired" a contract.  More glaringly, Plaintiffs

do not identify an impaired contract at all. Accordingly, Plaintiffs have failed to state a claim, and Count VIII will be dismissed.

## IV.  Conclusion

For the foregoing reasons, Defendant's motion to dismiss will be granted in part and denied in part. A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
