IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| BRANCH AVENUE AUTO AUCTION, LLC, et al. | : | |
| v. | : | Civil Action No. DKC 25-387 |
| MARYLAND VEHICLE ADMINISTRATION- GLEN BURNIE | : | |

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this constitutional tort case is the motion for summary judgment filed by Defendant Maryland Vehicle Administration – Glen Burnie ("Defendant" or "MVA"), (ECF No. 42), and the "motion for order on pleadings" filed by Plaintiffs Branch Avenue Auto Auction, LLC, Branch Ave Auto Sales, Inc., and Jason Hairston (collectively "Plaintiffs"), (ECF No. 50). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion for summary judgment will be granted, and the motion for an order on the pleadings will be denied as moot.

**I. Background[1]**

This case arises from the alleged refusal of Defendant to register vehicles sold by Plaintiffs, and investigative activities

---

[1] The following facts are either undisputed or construed in the light most favorable to Plaintiffs.

of Defendant at Plaintiffs' business locations.  Plaintiff Jason Hairston owns two businesses, Branch Avenue Auto Auction, LLC ("Branch Avenue Auction") and Branch Ave Auto Sales, Inc. ("Branch Avenue Sales").  (ECF No. 42-5, at 4-6).  Branch Avenue Auction is in Temple Hills, Maryland, and sells used cars to members of the public.  (*Id*. at 4).  Branch Avenue Sales is a retail car dealership, whereas Branch Avenue Auction is a wholesale business. (*Id*. at 6).  Both sell vehicles to Maryland residents.  (*Id*.). Mr. Hairston purchased Branch Avenue Auction from Kenneth Estepp, Sr. in approximately 2016.  (*Id*. at 4).

Before Mr. Hairston purchased Branch Avenue Auction from Mr. Estepp, he performed title work for their transactions.  He asserts that Mr. Estepp would stamp his titles with out-of-state dealership stamps, and Mr. Hairston did the same when he began running the business.  (*Id*. at 9).  Mr. Hairston is licensed to sell vehicles in the state of Maryland and represents that he is familiar with the relevant law.  (*Id*.).  He admits, however, that his companies have been "selling vehicles wholesale to Maryland residents who are not dealers" without a wholesaler's license.  (*Id*. at 10). Mr. Hairston also admits that he is aware that there are "different obligations under Maryland law depending on whether the prior owner owned the vehicle in state or out of state."  (*Id*. at 11).  As relevant here, vehicle inspection requirements depend on whether

a car is purchased by a Maryland resident from a dealer within the state or outside of the state.  A Maryland company must complete a vehicle inspection before it sells a car to a Maryland resident. (*Id*. at 13).  A company outside of Maryland, however, can sell a vehicle to a Maryland resident without an inspection.  (*Id.*).  By stamping the title with the information for an out-of-state dealership, Mr. Hairston could sell a vehicle to a Maryland resident without an inspection.  (*Id.*).  On at least one instance identified in the record, a Maryland resident who purchased a car from Branch Avenue Auction had his title documents stamped as being sold by a dealership in Marietta, Georgia.  (*Id*. at 14-16; *see also* ECF No. 42-4, at 5, 7).  The dealership in Georgia had no role in the transaction.  (ECF No. 42-5, at 18).  Mr. Hairston explained that he used the Georgia address because he was "under the dealership as a buyer and seller."[2]  (*Id*. at 12).

The MVA began looking into Mr. Hairston's businesses, and he had his first interaction with an investigator in September 2023. (*Id*. at 18).  No enforcement action was taken in 2023.  (*Id*. at

---

[2]  The record does not disclose Mr. Hairston's precise relationship with the Marietta, Georgia business.  He states that he "was a salesman out of there" and "had auction access."  (ECF No. 42-5, at 7).  As "proof that [he] was able to buy and sell vehicles under this company," his counsel apparently sent a screenshot of Mr. Hairston's login information for a website called "Auction Access," showing that the Marietta, Georgia business was one of the "companies" on his account.  (ECF No. 42-3).

19).  Mr. Hairston next interacted with MVA in June 2024, following the transaction described above.  (*Id.* at 20).  Around that time, Mr. Hairston went to a meeting at MVA's offices in Glen Burnie, Maryland.  (*Id*. at 21).  According to Mr. Hairston, he was "told that [he] cannot use the stamp, and that they wanted [him] to not sell any vehicles that [were] not Maryland inspected, and . . . [he] could not process a tag for a vehicle that was sold through the auction."  (*Id.*).  Mr. Hairston did not receive any written enforcement orders, but the MVA employees requested and took Mr. Hairston's stamp.  (*Id.*).  When Mr. Hairston asked what he could do to return to business, one of the MVA investigators said "get the white boy behind the counter to do it – to get a license."[3] (*Id.*).  After being verbally told to cease and desist business in June 2024, Mr. Hairston did not restart business until early 2025. (*Id*. at 25).

Plaintiffs filed their complaint in the Circuit Court for Prince George's County on December 29, 2024, (ECF No. 3), and Defendant removed the case to this court on February 7, 2025, (ECF No. 1).  The court previously granted Defendant's motion to dismiss in part, dismissing six of the eight counts in the complaint.  (ECF

---

[3] This is the only mention of the "license," seemingly referring to the wholesaler's license, in the deposition's description of the enforcement activity in June 2024.  The record does not clarify if Mr. Hairston subsequently obtained the license.

No. 15).  MVA filed a motion for summary judgment on the remaining two counts on October 30, 2025.  (ECF No. 42).  Plaintiffs filed an opposition on November 9, 2025, (ECF No. 44), and MVA filed a reply on November 21, 2025, (ECF No. 47).  Plaintiffs also filed a "motion for order on pleadings," requesting an order adjudicating the motion for summary judgment, on May 6, 2026.  (ECF No. 50).  Defendant did not respond.

## II.  Standard of Review

Summary judgment is appropriate under Fed.R.Civ.P. 56(a) when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law.  A fact is material if it "might affect the outcome of the suit under the governing law."  *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Henry v. Purnell*, 652 F.3d 524, 548 (4th Cir. 2011) (Shedd, J., dissenting)).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  When evaluating a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Id.* at 249.  Accordingly, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but

whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id*. at 252.

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion. *See Scott v. Harris*, 550 U.S. 372, 378 (2007); *Emmett v. Johnson*, 532 F.3d 291, 297 (2008). A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Id*. Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 254; *Celotex Corp.*, 477 U.S. at 324.

A "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Chung Shin v. Shalala*, 166 F.Supp.2d 373, 375 (D.Md. 2001) (citing *Deans v. CSX Transp., Inc.*, 152 F.3d 326, 330–31 (4th Cir. 1998); *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)). The court has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *See Drewitt v. Pratt*, 999 F.2d 774,

778–79 (4th Cir. 1993) (quoting *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987)).

## III. Analysis

Defendant moves for summary judgment on both remaining claims: the Fourteenth Amendment equal protection claim under 42 U.S.C. § 1983 (Count VII), and the tortious interference with business relations claim (Count III).

### A.   Incorrect Party

MVA first briefly argues that the complaint should be dismissed because Plaintiffs named a non-existent entity, "Maryland Vehicle Administration – Glen Burnie," as the defendant. (ECF No. 42-1, at 10).   Defendant has maintained since the beginning that the correct entity is Maryland Department of Transportation, Motor Vehicle Administration.   (*See* ECF No. 7-1, at 1 ("Defendant, Motor Vehicle Administration . . . [is] named in Plaintiff's Complaint as 'Maryland Vehicle Administration – Glen Burnie[.]'").   Despite this notice, Plaintiff has not sought leave to amend or substituted the proper defendant.   The complaint need not be dismissed solely due to this mistake, particularly because the proper defendant has been participating in the litigation since the beginning.   *See Riverkeeper v. U.S. Army Corps of Eng'rs*, No. 10-cv-01834-AW, 2011 WL 13078022, at *1 (D.Md. Jan. 18, 2011) ("[T]he Court finds it senseless to dismiss without prejudice and

7

further delay resolution of issues that must be addressed eventually."). The court will not dismiss on this ground and will instead proceed to the summary judgment arguments.

**B.    Equal Protection Claim**

Defendant argues it is entitled to judgment on the Fourteenth Amendment equal protection claim because it is not a "person" within the scope of 42 U.S.C. § 1983.  (ECF No. 42-1, at 10). Plaintiffs assume that Defendant is making a different argument, a lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1) because the MVA has Eleventh Amendment immunity from suit as a part of the state of Maryland.  (ECF No. 44, at 4-5).  The immunity issues were previously addressed, (ECF No. 14), and were not reasserted by Defendant.  The response appears to contain a collection of passages copied verbatim from other sources, including judicial opinions.  As pointed out by Defendant, Plaintiffs did not respond to the argument actually presented.

Plaintiffs did not cite to § 1983 in their complaint, purporting instead to bring a claim directly under the Fourteenth Amendment.  (ECF No. 3, at 5).  The Fourteenth Amendment does not create a cause of action.  Rather, 42 U.S.C. § 1983 allows litigants to sue a "person" who deprives an individual of his or her constitutional rights under color of state law for money damages.  *Hughes v. Bedsole*, 48 F.3d 1376, 1383 n.6 (4th Cir. 1995)

(citing *Zombro v. Baltimore City Police Department*, 868 F.2d 1364, 1366 (4th Cir. 1989)). Plaintiffs brought an action for money damages alleging they were deprived of their equal protection right under the Fourteenth Amendment by a state entity. Section 1983 is the relevant vehicle for such an action.

Defendant is correct that such a suit cannot be maintained against MVA. While § 1983 "permits suit against 'every person' who deprives an individual of his or her rights under color of state law," states do not "constitute 'persons' within the meaning of the statute when sued for monetary relief." *Fauconier v. Clarke*, 966 F.3d 265, 279-80 (4th Cir. 2020) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)). The same is true for state entities. Courts have repeatedly found that the Motor Vehicle Administration is not a "person" for purposes of § 1983. *See Inyangette v. Motor Vehicle Admin.,* No. 24-cv-02372-JRR, 2025 WL 2097491, at *3 n.3 (D.Md. July 25, 2025) ("MVA is not a 'person' subject to suit under 42 U.S.C. § 1983."); *Harris v. Motor Vehicle Admin.*, No. 07-cv-1688-RDB, 2008 WL 11509368, at *4 (D.Md. Feb. 5, 2008) ("[T]he MVA, as a unit of the State of Maryland, is not a 'person' subject to suit . . . under 42 U.S.C. § 1983 seeking monetary damages for . . . alleged Fourteenth Amendment violations."). Defendant's motion for summary judgment will be

9

granted with respect to the § 1983 claim (Count VII), which will be dismissed.

### C.   Tortious Interference with Business Relations

The final claim remaining is Count III, construed as a tortious interference with business relations claim.[4]   (*See* ECF No. 14, at 11).

> Under Maryland law the following elements are necessary to state a claim under the tort of intentional interference with business relations: "(1) intentional and willful acts; (2) calculated to cause damage to the plaintiffs in their lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants; and (4) actual damage and loss resulting."

*S. Volkswagen, Inc. v. Centrix Fin., LLC*, 357 F.Supp.2d 837, 850–51 (D.Md. 2005) (quoting *Berlyn, Inc. v. Gazette Newspapers*, 223 F.Supp.2d 718, 741 (D.Md. 2002)).   Defendant argues that "Plaintiffs cannot establish that the MVA acted with an 'unlawful purpose' and acted 'without right or justifiable cause' because the MVA's investigatory and enforcement activities were initiated in response to customer complaints and because false and misleading

---

[4] Courts have used the terms "tortious interference with business relations" and "intentional interference with business relations" interchangeably when discussing Maryland law. *See Nat'l Bd. for Certification in Occupational Therapy, Inc. v. Am. Occupational Therapy Ass'n*, 24 F.Supp.2d 494, 505–06 (D.Md. 1998); *S. Volkswagen, Inc. v. Centrix Fin., LLC*, 357 F.Supp.2d 837, 850–51 (D.Md. 2005).

information was being affixed to certificates of title." (ECF No. 42-1, at 12). Reviewing the record, the court agrees that Defendant is entitled to summary judgment on the tortious interference with business relations claim.

According to the Supreme Court of Maryland, "an act of tortious interference with economic relations is characterized by the defendant's specific purpose to interfere, and . . . acts which incidentally affect another's business relationship are not a sufficient basis for the tort." *Alexander & Alexander Inc. v. B. Dixon Evander & Assocs., Inc.*, 336 Md. 635, 656 (1994) (citing *K & K Mgmt., Inc. v. Lee*, 316 Md. 137, 160-65 (1989)). The record does not contain any evidence that the MVA's specific purpose was to interfere; rather, the MVA carried out its investigatory and enforcement mission. "The Motor Vehicle Administration (MVA), a unit within the State Department of Transportation, is the agency that licenses, and to a degree, regulates, automobile dealers and salesmen." *Md. Indep. Auto. Dealers Ass'n, Inc. v. Adm'r, Motor Vehicle Admin.*, 41 Md.App. 7, 9 (1978). The MVA is statutorily required to "refuse to issue a certificate of title of a vehicle if [t]he application contains any false or fraudulent statement." Md. Code Ann., Transp. § 13-110(1) (West). The MVA also oversees the licensing of automobile dealers, including wholesale dealers. *See, e.g., id.* § 15-305.1 ("Authorized activities for licensed

11

wholesale dealers; recordkeeping requirements"); *id*. § 15-302 ("License required to conduct business of a dealer"); *id*. § 15-309 ("License to conduct business of a dealer, authorized activities").

The facts in the record justify MVA's actions against Plaintiffs.  Mr. Hairston acknowledges that he was stamping information for a dealership in Georgia on the title certificates for cars he sold in Maryland even though the dealership in Georgia had no role in the transactions.  (ECF No. 42-5, at 9).  He acknowledges that there is a specific license for wholesale dealers in Maryland, (*id*. at 10), he was selling vehicles wholesale, (*id*. at 6, 10), and he did not have a wholesale license, (*id*. at 10). These actions, as alleged, violate Maryland laws that MVA is tasked with enforcing.  It is clear from the record that MVA had a lawful purpose in its interference with Plaintiffs' businesses.[5]  *See State v. Roshchin*, 446 Md. 128, 139 (2016) ("A lawful arrest of a driver and impoundment of an unattended vehicle constitutes legal

---

[5] Mr. Hairston's deposition makes up the bulk of the record, and it does not always delineate which Plaintiff's actions are being discussed.  It is clear, however, that both businesses owned by Mr. Hairston sell vehicles to Maryland residents.  (*See* ECF No. 42-5, at 6 (When asked if "both of [the Plaintiff companies] sell to Maryland residents," Mr. Hairston replied, "Yes.")).  Given Mr. Hairston's unqualified admission that he used the out-of-state stamp on title certificates of vehicles sold to Maryland residents, (*id*. at 9), summary judgment against all Plaintiffs is appropriate on this record.

justification for an act that would otherwise be tortious interference with business relations."). Defendant's motion for summary judgment will be granted for Count III.[6]

## IV. Conclusion

For the foregoing reasons, Defendant's motion for summary judgment will be granted, and the motion for an order on the pleadings will be denied as moot. A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge

---

[6] Because Plaintiffs' motion for an order on the pleadings only requested an order adjudicating the motion for summary judgment, (ECF No. 50), the motion will be denied as moot.